# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 2, 2007**

Charles R. Fulbruge III
Clerk

No. 06-40221

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

JEFFREY ALLEN

Defendant-Appellant

Appeal from the United States District Court for the
Eastern District of Texas, Lufkin Division
USDC No. 9:04-CR-6
USDC No. 9:04-CV-274

Before JONES, Chief Judge, and STEWART and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Jeffrey Allen appeals the district court's dismissal of his motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. We AFFIRM.

## I. FACTS AND PROCEEDINGS

On April 19, 2004, Allen pleaded guilty to one count of violating 18 U.S.C. § 2252A(a)(2)(A) for the receipt and distribution of child pornography. He was sentenced to sixty-three months of imprisonment.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

On December 10, 2003, Allen's adult stepdaughter, Stephanie Best, contacted the Federal Bureau of Investigation ("FBI") in Lufkin, Texas and related that her mother and stepbrother believed that there were images of child pornography on their home computer. FBI personnel told her that if her mother had equal access to the computer and believed that it contained images of child pornography, then her mother could bring the computer to the FBI office and sign a consent-to-search form.

On December 29, 2003, Allen's wife, Yvonne Allen, brought the computer to the Lufkin FBI office and was interviewed by Special Agent Goodson. Yvonne Allen had been told by her twenty-one-year-old stepson, Damon Allen, that his father, Jeffrey Allen, had accessed Web sites and downloaded child pornography. She stated that on several occasions, Damon Allen had accessed the computer after Jeffrey Allen, viewed Web sites that his father had visited, and showed them to her. Yvonne Allen stated that she had seen at least two pictures of naked eight- or nine-year-old girls, and that Damon told her about other child pornography he had seen on the computer. Yvonne Allen told Goodson that she had always had full access to the computer and usually played solitaire on it. She signed a consent form authorizing the FBI to search the computer.

On December 30, 2003, Damon Allen was interviewed and said that he had seen video clips on the computer that he believed to be child pornography. He described how to access those video clips on the computer, but did not mention the existence of any password-protection. Damon Allen's only mention of passwords during the interview were those used by his father to access an online service, not files on the computer's hard-drive.

In a report dated January 17, 2004, computer forensic examiner Donald Wills of the North Texas Regional Computer Forensic Laboratory described his examination of Allen's computer. Besides indicating that there was possible child pornography on the computer, Wills' report stated that the computer's

2

Windows software was registered to "Jeff," the e-mail account associated with the computer's Internet service provider was "jallen954," a newsgroup account was in the name of "jallen9543@directway.com," and the computer held a folder entitled "jallen9543." Wills extracted selected files from the computer. The report does not indicate that any files were password-protected nor that the examiner used software to decrypt or bypass password-protection.

At the time of his arrest on February 9, 2004, Allen said that he knew he was being arrested because he had inappropriate material on his computer. He stated that the images of child pornography on his computer had been downloaded without his knowledge and without the knowledge of anyone in his household. He said that many things had appeared on his computer without his knowledge over the years and argued that someone else could have downloaded the images on his computer while it was on.

After sentencing, Allen filed a notice of appeal on September 24, 2004, but it was dismissed for being filed out of time. On December 20, 2004, Allen filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

During those proceedings, Allen's trial counsel, Gregory Waldron, provided an affidavit to the district court. Waldron's affidavit reiterated the information that Yvonne and Damon Allen provided to the FBI and indicated that Waldron reviewed their statements and all discovery with Allen. Allen did not object to the statements of his wife and son. Based upon those statements, Waldron concluded that Yvonne Allen had authority to give consent to search the computer.

Allen now appeals the dismissal of his motion to vacate his conviction on two grounds. He claims that the search of his computer was unlawful and that his claim on this point was not waived by his guilty plea. He also claims that he

received ineffective assistance of counsel when Waldron did not file a motion to suppress the evidence seized during the search of the computer.

## II. STANDARD OF REVIEW

In reviewing the denial of a motion under 28 U.S.C. § 2255, this Court reviews factual findings for clear error and conclusions of law de novo. United States v. Faubion, 19 F.3d 226, 228 (5th Cir. 1994). Because ineffective assistance of counsel claims are mixed questions of law and fact, they are subject to de novo review. Id.

## III. DISCUSSION

A.    Lawfulness of the Computer Search

"A plea of guilty admits all the elements of a formal criminal charge and waives all non-jurisdictional defects in the proceedings leading to conviction. The plea waives claims of governmental misconduct during the investigation and improper motives for prosecution." United States v. Cothran, 302 F.3d 279, 285–86 (5th Cir. 2002) (internal quotations omitted). Allen pleaded guilty on April 19, 2004. He makes no argument and cites no authority to suggest that he did not waive his right to challenge the search of his computer when he pleaded guilty. The district court did not err in dismissing this claim.

B.    Ineffective Assistance of Counsel

To evaluate an ineffective assistance of counsel claim, this Court first determines whether the counsel's performance was deficient. Turner v. Quarterman, 481 F.3d 292, 298 (5th Cir. 2007). "This requires [the defendant to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)). "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688. Second, this Court determines whether the deficient performance prejudiced the defense. Turner, 481 F.3d at

298. "This requires [the defendant to show] that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. (quoting Strickland, 466 U.S. at 687). To demonstrate prejudice in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

Allen claims Yvonne Allen lacked authority to consent to the search, particularly to consent to the search of password-protected files on the computer. Allen argues that Waldron's failure to move to suppress the evidence seized during the search of the computer constituted deficient performance that prejudiced his decision to plead guilty. To determine whether Waldron's performance was deficient, we must determine whether his decision not to move to suppress the evidence was reasonable.

To justify a warrantless search based on consent received from a third party, the Government must prove that the third party had either actual or apparent authority to consent. United States v. Gonzales, 121 F.3d 928, 938 (5th Cir. 1997). "To establish that a third party had actual authority to consent, the government must demonstrate mutual use of the property by persons generally having joint access or control for most purposes." Id. (internal quotations omitted). To establish whether a third party had apparent authority to consent, the Government "need demonstrate only that the officers reasonably believed that the third party was authorized to consent." Id.

The first question Waldron faced was whether the law regarding consent searches of other containers applied to consent searches of computers. Although this Court has not addressed the issue, other courts had by December 2003. In Trulock v. Freeh, the Fourth Circuit applied the law of consent searches to a personal computer used by two people living together. 275 F.3d 391, 402–03 (4th Cir. 2001). In that case, the court held that the third party did not have

authority to consent to a search of password-protected files on the computer because they were "analogous to [a] locked footlocker inside [a] bedroom." Id. at 403. In United States v. Smith, a district court denied a motion to suppress evidence seized during the consent search of a computer based on the apparent authority of the defendant's live-in girlfriend. 27 F.Supp.2d 1111, 1116 (C.D. Ill. 1998).

Although unpublished decisions are of limited persuasive authority, they would have helped Waldron determine the applicability of consent search law to a computer. In an unpublished decision, the Fourth Circuit upheld the search of a computer disk turned over to police by the defendant's wife based on her common authority over the property. United States v. Mannion, 54 Fed.Appx. 372, 373–74 (4th Cir. 2002). Also in an unpublished decision, the Sixth Circuit upheld the consent search of a computer based upon the apparent authority of a third party, because the defendant "never told [the third party] she could not use the new computer nor restricted her access with password protections." United States v. Aaron, 33 Fed.Appx. 180, 184 (6th Cir. 2002). Most importantly, no circuit has held that different principles apply to searches of computers than those that apply to the searches of other containers.

While applying this law to the facts of the case before him, Waldron had read Yvonne and Damon Allen's statements to Special Agent Goodson. According to Goodson's report, Yvonne Allen told him that she had equal access to the computer and "usually play[ed] solitaire on it." From Waldron's perspective, he had no reason to believe that Yvonne Allen's access to the computer was exclusively limited to playing solitaire. Also, Yvonne Allen brought the computer to the FBI office and turned it over to Goodson. Damon Allen's easy access to what he believed to be child pornography suggested that all family members had full access to the computer. Nothing suggested to

Waldron that agents were unreasonable in their belief that Yvonne Allen had authority to consent to a search of the computer.

Allen relies on Trulock to suggest that Waldron should have challenged the search of password-protected files on the computer to which only Allen had access. If there were any evidence in the record that the files were protected by a password, Allen's claim might have merit. But to the contrary, the record shows that no password-protection existed for files on the hard drive of the computer. Allen's son accessed what he believed to be child pornography on the computer. He even gave directions on how to open those files, and did not indicate that any password was necessary to open them. The computer examination report did not mention passwords nor did it mention any software used to break or circumvent passwords. Most of all, Allen's statement to arresting agents that any child pornography on the computer must have been downloaded by someone else suggests that no password-protection existed.

Assuming for the purpose of argument that the files were locked and only Allen had access to them, Waldron's decision was still reasonable. Waldron reviewed the FBI interview reports of Allen's wife and son with Allen, including his son's assertion that he had accessed files on the computer that he believed to contain child pornography without mentioning a password, even though he described passwords that Allen used to access online services. Yet, Allen never told Waldron that his son's statements were false—that those files were protected by a password that only he knew. In Strickland v. Washington, the Supreme Court wrote:

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depend critically on such information.

466 U.S. 688, 691 (1984). Waldron had no indication that any computer files were protected by a password, and Allen had ample opportunity to inform Waldron if any were. This Court cannot say that Waldron's decision was unreasonable when both the law and facts indicated that the motion to suppress the evidence seized from the computer would have been denied. The district court did not err in dismissing Allen's ineffective assistance of counsel claim.[1]

## IV. CONCLUSION

The judgment of the district court is AFFIRMED.

---

[1] Because Allen has failed to show that Waldron's performance was deficient, we have no need to explore whether his actions prejudiced Allen.