IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-41238
_____


UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

BRUCE GALEN EVERETT,


Defendant - Appellant

_____

Appeal from the United States District Court
for the Eastern District of Texas
(4:98-CR-80-ALL)
_____
November 2, 2000

Before KING, Chief Judge, PARKER, Circuit Judge, and KAZEN,[*]
District Judge.

PER CURIAM:[**]

Bruce Galen Everett was convicted on two counts of being a

felon in possession of ammunition that had been shipped in

interstate commerce in violation of 18 U.S.C. § 922(g)(1) (2000).

The district court enhanced Everett's sentence under § 4B1.4 of

[*]     District Judge of the Southern District of Texas,
sitting by designation.

[**]    Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

the U.S. Sentencing Guidelines, finding that he was an "armed career criminal." See U.S. SENTENCING GUIDELINES MANUAL § 4B1.4 (1998). Consequently, Everett was sentenced to 188 months in prison on each count, to run concurrently. Everett timely appealed both the conviction and the sentence. For the following reasons, we AFFIRM.

## I. FACTS AND PROCEDURAL HISTORY

On October 23, 1998, the Plano Police Department received a domestic violence call at Everett's residence. Several Plano police officers were dispatched to Everett's home, and when they arrived, they were met by a visibly upset Joanna Everett, Everett's wife. During the ensuing conversation with Mrs. Everett, she revealed that she feared her husband was "reverting to his old ways" and was acting very paranoid and violent. Moreover, Mrs. Everett related to the officers that Everett kept a pistol and ammunition hidden in the home. While the officers were speaking to Mrs. Everett, Everett exited the house. Upon investigating the domestic disturbance, the police arrested Everett for family violence.[1]

After Everett was transported to the Plano Police Department, Mrs. Everett offered to take Officer Jeff Rich into the home and help him look for the pistol. Mrs. Everett led Rich to the closet of the master bedroom, where Rich discovered an

---

[1] Mrs. Everett subsequently decided not to press charges against Everett and bonded him out of jail.

empty pistol pouch and a pellet pistol.  Mrs. Everett informed

Rich that her husband had another handgun in addition to the

pellet pistol.  A further search, however, failed to reveal any

firearms.

As another officer continued to search the closet, Mrs.

Everett directed Rich to a chest of drawers in the master

bedroom.  Mrs. Everett identified the chest of drawers as her

husband's.  The chest of drawers was filled with male clothing,

and auto parts were on top of it.[2]  In the top drawer, which Mrs.

Everett identified as "his drawer," the officers found several

pocket knives and a number of loose rounds of ammunition of

varying caliber.  A further search of the chest of drawers

revealed no other ammunition.

On October 28, 1998, Rich was contacted by Joe Patterson, a

special agent with the Bureau of Alcohol, Tobacco, and Firearms

(ATF).  Based upon Rich's account of the search of Everett's

home, Patterson applied for and was granted a search warrant to

search the Everett home for firearms and ammunition.  The ATF

executed the warrant on October 30 and discovered the seventeen

rounds of loose ammunition observed by Rich during his search of

the residence.  In addition, the ATF unearthed three boxes of 9mm

ammunition in the bottom drawer of the same chest of drawers in

_____

[2]   There was a second chest of drawers in the master
bedroom that contained only female clothing.

3

which the loose ammunition was located.  No firearms were discovered.

Everett was arrested and indicted on two counts of being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1).  In the first count, Everett was charged with being in possession of the three boxes of 9mm ammunition.  The second count charged Everett with possession of the loose ammunition. After a jury trial, Everett was found guilty on both counts of the indictment and, based upon his status as an armed career criminal, was sentenced to 188 months on each count, with the sentences to run concurrently.

Everett raises several issue on appeal, and we address each in turn.

## II. ADMISSIBILITY OF EVERETT'S STATEMENT

First, Everett argues that a statement he made to Patterson at the time of his arrest was inadmissible because he was under custodial interrogation at the time he made the statement and had received no Miranda warnings.  After the ammunition was discovered by the ATF, and Patterson made an initial determination that it had been manufactured outside the state, Patterson radioed the Plano police officers who had Everett under surveillance and requested that they detain him.  When Patterson arrived at the scene where Everett was being detained, he approached Everett to arrest him.  At that time, Patterson

4

introduced himself and informed Everett that he "was being arrested for violations of the federal firearms laws." To this, Everett replied that he did not possess any firearms. Patterson then stated that he was being arrested for being in possession of ammunition. At that point, Everett looked at Patterson and responded, "Hypothetically, I didn't realize that a convicted felon couldn't possess ammunition."

At the time he made the statement, Everett had not been advised of his Miranda rights. Everett maintains that at the time of the exchange, he was in custody, Patterson purposefully engaged him in conversation, and such conversation "constituted an interrogation within the broad meaning of the concept." The government responds that Everett's statement was voluntary and was not in response to custodial interrogation.

### A. Standard of Review

Miranda warnings must be given prior to custodial interrogation. See United States v. Paul, 142 F.3d 836, 843 (5th Cir. 1998). "The question of whether Miranda's guarantees have been impermissibly denied to a criminal defendant, assuming the facts as established by the trial court are not clearly erroneous, is a matter of constitutional law, meriting de novo review." United States v. Harrell, 894 F.2d 120, 122-23 (5th Cir. 1990); see also United States v. Gonzales, 121 F.3d 928, 938 (5th Cir. 1997). In reviewing a ruling on a motion to suppress, we view the evidence in the light most favorable to the party

5

that prevailed on the motion in the district court.[3]  See

Gonzales, 121 F.3d at 938.

### B. Everett's Statement Was Voluntary

### and Admissible

The parties do not contest that Everett was in custody at

the time of the statement.  At issue is whether the exchange

between Patterson and Everett constituted "interrogation" within

the meaning of Miranda.  "Custodial interrogation" has been

defined by the Supreme Court as "'questioning initiated by law

enforcement officers after a person has been taken into

custody.'"  Illinois v. Perkins, 496 U.S. 292, 296 (1990)

(quoting Miranda v. Arizona, 384 U.S. 436, 444 (1966)).

Everett was, in fact, in custody at the time he made the

statement, but this statement was not in response to "questioning

initiated by law enforcement officers."  See Gonzales, 121 F.3d

at 939-40.  Everett's statement was voluntary; the police did not

ask him a single question.  We recognize that "'interrogation'

under Miranda refers not only to express questioning, but also to

any words or actions on the part of the police (other than those

normally attendant to arrest and custody) that the police should

know are reasonably likely to elicit an incriminating response

from the suspect."  Rhode Island v. Innis, 446 U.S. 291, 301

---

[3]  We understand that the defense counsel made an oral motion to suppress Everett's statement prior to jury selection. The court denied the motion.  This information was not made part of the record.

(1980) (footnote omitted).  However, Everett's statement was not initiated by "a measure of compulsion above and beyond that inherent in custody itself."  Id. at 300.  Indeed, his statement was not prompted by Patterson, but was made in response to being informed of the circumstances warranting his arrest.  As such, the exchange between Everett and Patterson cannot be characterized as custodial interrogation, and the statement was therefore admissible.

## III. SUFFICIENCY OF THE WARRANT

Everett moved to suppress the ammunition discovered during the October 30 search, arguing that Patterson's affidavit filed in support of the search warrant failed to set forth facts establishing probable cause.  Therefore, Everett asserted that the search was invalid.  The district court denied Everett's motion to suppress, concluding that the evidence was admissible because the good faith exception to the exclusionary rule applied and that, in any event, Patterson's affidavit was sufficient to establish probable cause.

### A. Standard of Review

When reviewing the denial of a motion to suppress, we review factual findings for clear error and review the district court's conclusion regarding the constitutionality of the law enforcement

action de novo.  See United States v. Kelley, 140 F.3d 596, 601 (5th Cir. 1998).  In reviewing a challenge to the sufficiency of an affidavit supporting a search warrant, this court will consider the affidavit "independently of the district court and [is] not limited by the clearly erroneous standard of review." United States v. McKeever, 5 F.3d 863, 865 (5th Cir. 1993) (internal quotations and citations omitted) (alteration in original).  Nonetheless, the court "owes deference to the magistrate's determination of probable cause and . . . must construe the affidavit in a common-sense manner."  Id. (internal quotations omitted) (quoting United States v. Jackson, 818 F.2d 345, 348 (5th Cir. 1982)).

## B. Sufficient Probable Cause Existed

### for the Warrant

Everett argues that Patterson's supporting affidavit was "the equivalent of a 'bare bones' affidavit" because it was "derived solely from the observation of loose ammunition in a dresser drawer" and thus lacked the necessary facts "from which a Magistrate [could] independently determine probable cause."[4] Moreover, Everett contends that the affidavit failed to demonstrate a "nexus" between the firearms and ammunition listed in the warrant and interstate commerce.

---

[4]  Everett also asserts that the "conclusions rose to the level of deliberate or reckless material misstatement"; however, after a review of the record, we disagree.

The government responds that under the good faith exception to the exclusionary rule, the search was valid.  Moreover, it states that the district court alternatively found that even if the good faith exception did not apply, probable cause existed for the warrant.

We agree with the district court that sufficient probable cause existed for the issuance of the search warrant.  Under the "totality of circumstances" test, Patterson's affidavit in support of the warrant is sufficient to establish probable cause. See Illinois v. Gates, 462 U.S. 213, 238-39 (1983).

On October 23, the Plano police officers discovered the ammunition in the top drawer of a chest of drawers that Everett's wife indicated was his.  Moreover, Mrs. Everett told the Plano police officers that Everett kept a weapon and ammunition in the home.  After a telephone interview with Officer Rich, Patterson composed an affidavit relating Rich's account of Mrs. Everett's statements, as well as Rich's personal observation of the ammunition.  Drawing conclusions based upon his own experience, Patterson supplemented the affidavit with his knowledge that the type of ammunition described by Rich could not have been manufactured in Texas and thus must have moved in interstate traffic.

These facts, under a totality of the circumstances analysis, support that there was  a "fair probability" that the ammunition would be found in Everett's home.  See Gates, 462 U.S. at 238.

9

Accordingly, the district court properly denied Everett's motion to suppress.

## IV. SUFFICIENCY OF THE EVIDENCE

Everett contends that there was insufficient evidence to support his conviction. To this end, Everett made two motions for acquittal during trial, both of which were denied by the district court.

### A. Standard of Review

This court reviews the denial of a motion for a judgment of acquittal de novo. See United States v. De Leon, 170 F.3d 494, 496 (5th Cir. 1999). In doing so, we consider "'whether, viewing the evidence in the light most favorable to the government, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.'" Id. (quoting United States v. Greer, 137 F.3d 247, 249 (5th Cir.), cert. denied, 524 U.S. 920 (1998)).

### B. The Evidence Was Sufficient to Support the Convictions

A conviction under 18 U.S.C. § 922(g)(1) requires the government to prove that (1) Everett was a convicted felon; (2) who knowingly possessed the ammunition; and (3) the ammunition traveled in or affected interstate commerce. See 18 U.S.C. § 1922(g)(1); De Leon, 170 F.3d at 496. Everett stipulated that

10

he had a prior felony conviction.  However, Everett argues that the evidence was insufficient to prove he "possessed" the ammunition.

Possession may be either actual or constructive and may be proved by circumstantial evidence.  See United States v. Jones, 133 F.3d 358, 362 (5th Cir. 1998); see also De Leon, 170 F.3d at 496.  A defendant may be found in constructive possession of the ammunition if it is proven that he had "ownership, dominion or control over an illegal item itself or dominion or control over the premises in which the item is found."  De Leon, 170 F.3d at 496.  However, if two or more persons jointly occupy the place in which the ammunition was discovered, "mere control or dominion of that place is, by itself, insufficient to establish constructive possession."  United States v. Fields, 72 F.3d 1200, 1212 (5th Cir. 1996).  Additional evidence is required, and that evidence must demonstrate "at least a plausible inference that the defendant had knowledge of and access to the [contraband]."  Id.

Accordingly, because Everett and his wife jointly occupied the house and the bedroom in which the ammunition was found, we must consider the additional evidence and determine if it creates a "plausible inference" that Everett knew of and had access to the ammunition.  Although Everett claims that his dominion over the house was insufficient to establish possession[5] and that

---

[5]  Everett points to a number of cases in which a co-inhabitant of a dwelling had been found not to possess

11

there was testimony at trial indicating that he did not own the ammunition, our review of the record leads us to the opposite conclusion.

Everett points out that Mrs. Everett testified that the loose ammunition actually belonged to her and that she had inherited it from her deceased father. As to the 9mm ammunition, Everett's employee, Chris Odom, testified that on October 29, he had purchased some cleaning supplies for Mrs. Everett at a local Wal-Mart and bought the 9mm ammunition for himself. Odom claimed that when he left the supplies at the Everetts' home, he also inadvertently left the ammunition.[6]

Viewing the evidence in the light most favorable to the government and the credibility choices in favor of the verdict, we find that there is sufficient evidence to support an inference

---

contraband. See, e.g., United States v. Mergerson, 4 F.3d 337, 349 (5th Cir. 1993) (finding there was no evidence that defendant was aware that there was a weapon in the house he shared with his girlfriend). Everett's reliance on these cases is unavailing. For example, in Mergerson, the gun was found under the mattress; the defendant had only lived in the apartment for one month prior to his arrest; and the defendant produced a pawn shop receipt demonstrating that the gun in question had been purchased by the girlfriend before the defendant moved into the apartment.

[6] Odom was subsequently indicted on one count of aggravated perjury. An investigation revealed that only one box of 9mm ammunition, as opposed to three boxes, was purchased on the day Odom claimed he bought the cleaning supplies and ammunition. Moreover, the one box of ammunition purchased at the local Wal-Mart on that day was purchased by credit card, as opposed to cash, with which Odom claimed he paid. Odom pled guilty to one count of making false declarations before a court in violation of 18 U.S.C. § 1623.

that Everett had knowledge of and access to the ammunition. Everett owned the home in which the ammunition was discovered; the ammunition was found in Everett's chest of drawers[7]; and his statement to Patterson at the time of his arrest implied that he knew ammunition was in the house. Accordingly, we find that there was sufficient evidence supporting Everett's conviction.

## V. DOUBLE JEOPARDY

The jury found Everett guilty of two counts of being a felon in possession of ammunition. One count concerned the 9mm ammunition located in the bottom drawer of Everett's chest of drawers, and the second count involved the loose ammunition discovered in the top drawer. Everett was sentenced to 188 months in prison and five years supervised release on each count, with the sentences to run concurrently. Moreover, Everett received a fine of $17,500 ($8750 for each count)[8] and a special

---

[7] We note that when the loose ammunition was discovered in the top drawer of the dresser on October 23, Mrs. Everett told the police not only that the drawer was her husband's, but that she never went into it and that anything in the drawer would be his property. There was no objection to the admissibility of these hearsay statements by Mrs. Everett. Hearsay admitted without objection "'is to be considered and given its natural probative effect as if it were in law admissible.'" United States v. Gresham, 585 F.2d 103, 106 (5th Cir. 1978) (quoting Daniel v. United States, 234 F.2d 102, 107 (5th Cir. 1956)).

[8] Under § 5E1.2 of the U.S. Sentencing Guidelines, the minimum fine for a defendant with an offense level of 33 is $17,500 for each offense; however, the district court chose to

13

assessment of $200 ($100 for each count).  Everett contends that these sentences violate the Double Jeopardy Clause of the Constitution.

## A. Standard of Review

Because Everett failed to object to the sentencing on both counts at the sentencing hearing and raises the issue of double jeopardy for the first time on appeal, this court reviews his sentence for plain error.  See United States v. Pineda-Ortuno, 952 F.2d 98, 105 (5th Cir. 1992) (addressing double jeopardy claim under plain error even though defendant failed to raise it at trial).

## B. There Was No Double Jeopardy Violation

## Under Plain Error Review

The Double Jeopardy Clause of the Fifth Amendment prohibits the government from charging a single offense in several counts and is intended to prevent multiple punishments for the same act. See United States v. Kimbrough, 69 F.3d 723, 729 (5th Cir. 1995); United States v. Berry, 977 F.2d 915, 918 (5th Cir. 1992).  The Double Jeopardy Clause may be violated even in a case of concurrent sentences.  See Ball v. United States, 470 U.S. 856, 864 (1985).  Moreover, "for double jeopardy purposes, sentences are not truly concurrent where a mandatory special assessment is

_____

fine Everett a total of $17,500.

separately imposed on each conviction." Kimbrough, 69 F.3d at 729; Berry, 977 F.2d at 920.

To ascertain whether Everett's sentences violate the Double Jeopardy Clause, we must determine if "'separate and distinct prohibited acts, made punishable by law, have been committed.'" United States v. Lemons, 941 F.2d 309, 317 (5th Cir. 1991) (quoting United States v. Swain, 757 F.2d 1530, 1537 (5th Cir.), cert. denied, 474 U.S. 825 (1985)) (considering whether "continuous" scheme to defraud was single offense or whether it contained separate offenses).  In United States v. Berry, the court found that it was error to convict a defendant on three counts of being a felon in possession of a firearm when a single search yielded three firearms.  See 977 F.3d at 919.  The court determined that, while it was not error to prosecute Berry on a separate count for each weapon, convicting and sentencing him on multiple counts violated Berry's rights under the Double Jeopardy Clause.  See id.  The Berry court suggested that had the government demonstrated that Berry obtained the guns at different times, or stored them in different places, sentencing on three separate counts might have been appropriate.  See id. at 920.

As in Berry, double jeopardy is implicated in this case because Everett received a mandatory special assessment of $100 for each count.  See id.; see also U.S. SENTENCING GUIDELINES MANUAL § 5E1.3.  Berry suggests that one method for obviating a violation of the Double Jeopardy Clause in the case of the

15

violations of § 922(g)(1) at issue here would be to show that Everett obtained the ammunition at separate times.  See Berry, 977 F.2d at 920.

The question presented, thus, is whether it is a permissible inference to draw from the evidence presented at trial that Everett obtained the ammunition on separate occasions.  On October 23, Officer Rich searched Everett's chest of drawers and discovered only the loose ammunition.  The subsequent search on October 30 revealed the three boxes of 9mm ammunition in the same chest of drawers.  Viewing this evidence in the context of a plain error review, we conclude that it is certainly permissible to infer that Everett obtained the ammunition at separate times. Therefore, we find no double jeopardy violation.

## VI. SENTENCING DEPARTURE

Finally, Everett asserts that the district court erred in applying the armed career criminal guideline and enhancing his sentence under § 4B1.4 of the U.S. Sentencing Guidelines.  See U.S. SENTENCING GUIDELINES MANUAL § 4B1.4.  The district court assessed Everett's guideline calculations under § 4B1.4 at an offense level of 33 and a criminal history category of IV, with a sentencing range of 188 to 235 months.  Accordingly, Everett was concurrently sentenced on each count to the minimum sentence of 188 months.

### A. Standard of Review

This court reviews the district court's factual findings for the purposes of sentencing for clear error, and the court's legal application of the Sentencing Guidelines de novo. See United States v. Franklin, 148 F.3d 451, 459 (5th Cir. 1998). We may disturb sentences imposed under the guidelines if the sentence is "'imposed in violation of law, as a result of an incorrect application of the sentencing guidelines, or . . . outside of the applicable guideline range and . . . unreasonable.'" United States v. Fitzhugh, 984 F.2d 143, 146 (5th Cir. 1993) (citations omitted) (alterations in original) (quoting United States v. Acosta, 972 F.2d 86, 90 (5th Cir. 1992)).

### B. Application of Armed Career Criminal Guideline
### Did Not Violate Eighth Amendment

Everett concedes that the Presentence Investigation Report accurately reflects that he had been convicted of three counts of armed bank robbery and one count of an assault on a federal officer. Moreover, Everett acknowledges that such convictions can support the application of the armed career criminal guidelines. Nonetheless, Everett argues that the enhancement he received violates the Eighth and Fourteenth Amendments of the Constitution.

The Eighth Amendment prohibits sentences that are grossly disproportionate to the crime for which the defendant has been convicted. See United States v. Gonzales, 121 F.3d 928, 942 (5th Cir. 1997). For this analysis, we must first compare the gravity

17

of the charged offense with the severity of the sentence.  <u>See</u> <u>id.</u>; <u>Smallwood v. Johnson</u>, 73 F.3d 1343, 1347 (5th Cir. 1996). Only if the sentence is grossly disproportionate may we consider whether the sentence offends the Eighth Amendment.  <u>See</u> <u>Smallwood</u>, 73 F.3d at 1347.

Given the gravity of Everett's prior convictions[9] and the evidence produced at trial, a 188-month sentence is not grossly disproportionate to the crime charged.  Everett was convicted of possessing ammunition.  He was also a thrice convicted bank robber.  Accordingly, we find that the enhancement under the armed career criminal guidelines did not violate the Eighth and Fourteenth Amendments in this case, and we conclude that the district court did not err in enhancing Everett's sentence under this provision.

---

[9]    This court considers the Supreme Court case of <u>Rummel v. Estelle</u>, 445 U.S. 263 (1980), to be the touchstone for determining whether a sentence violates the Eighth Amendment's proscription against cruel and unusual punishment.  <u>See</u> <u>Smallwood</u>, 73 F.3d at 1347-48.  In <u>Rummel</u>, the Supreme Court held that a sentence of life imprisonment with an opportunity for parole after twelve years did not constitute cruel and unusual punishment in a situation in which the defendant, convicted of obtaining $120.75 by false pretenses, had two prior felony convictions.  <u>See</u> <u>Rummel</u>, 445 U.S. at 285.  Our decision that Everett's sentence is not cruel and unusual is bolstered by a comparison to <u>Rummel</u>.  Because Everett's prior convictions were for violent felonies, and Rummel's prior convictions were "non-serious" (passing a bad check and a forged check), we conclude that "[t]here can be no argument, in the light of <u>Rummel</u>, that [Everett]'s sentence is disproportionate, much less <u>grossly</u> disproportionate, to his offense. . . . Rummel's record of offenses was much less grave than [Everett]'s."  <u>McGruder v. Puckett</u>, 954 F.2d 313, 317 (5th Cir.), <u>cert. denied</u>, 506 U.S. 849 (1992); <u>see also</u> <u>Smallwood</u>, 73 F.3d 1347-48.

## VII. CONCLUSION

For the reasons stated above, the judgments of conviction and sentence are AFFIRMED.