UNITED STATES of America, Plaintiff–Appellant,

v.

Bernard WATSON, Defendant–Appellee.

No. 94–3892.

United States Court of Appeals, Seventh Circuit.

Argued May 31, 1996.

Decided July 3, 1996.

Barry Rand Elden, Chief of Appeals and Jerome N. Krulewitch (argued), Office of the United States Attorney, Criminal Appellate Division, Chicago, IL, for plaintiff–appellant.

Elreta C.L. Dickinson, Chicago, IL and Anita Rivkin–Carothers (argued), Chicago, IL, for defendant–appellee.

Before BAUER, FLAUM, and KANNE, Circuit Judges.

BAUER, Circuit Judge.

The government appeals the district court's pre-trial suppression of a number of Bernard Watson's incriminating written and oral statements. Because we hold that the district court denied the government a fair suppression hearing, we reverse and remand for a new hearing.

Initially, we need to clarify what is **not** at issue in this appeal. This is not a challenge to the district court's credibility findings. Instead, the government argues at a more fundamental level, that the district court's evidentiary rulings denied the government a fair hearing. We agree.

On September 16, 1993, two FBI agents went to Watson's residence to interview him about his possible involvement in a 1992 armored truck robbery. That much is clear. However, from then on the facts are hotly disputed.[1] The agents, with or without consent, took Watson to a local police station for questioning. The parties differ about what Watson told the officers at the station, but agree that no one gave Watson *Miranda* warnings at the station. Later, the officers brought Watson to the scene of the crime, where he either acknowledged his guilt or was silent. The group then headed to the Dirksen Federal Building for more questioning. At this point, or later, the agents gave

---

1. Generally we defer to the district court's factual findings from a suppression hearing. *See United States v. Webb*, 83 F.3d 913, 916 (7th Cir.1996). However, given our conclusion that the district deprived the government of a fair hearing, and therefore ruled on an incomplete record, we will highlight the relevant factual disputes from the hearing.

Watson *Miranda* warnings and he signed a written waiver of rights. (The timing of the *Miranda* warnings is important because Watson also gave a written statement, and the parties disagree which came first.) Finally, Watson met with an Assistant United States Attorney ("AUSA") and signed another document. Watson argues that this document was the waiver of rights while the government contends that it was a cooperation agreement.

In early March 1994, the district court conducted a suppression hearing as to Watson's written and oral statements. During the government's direct examination of one of the officers, the government offered Watson's confession into evidence. The district court excluded the statement. During direct examination of another agent, the government offered into evidence the cooperation agreement that Watson allegedly signed. The district court also excluded this document as irrelevant given that the government acknowledged that Watson signed it *after* signing his written statement. Finally, during oral argument on the motion to suppress, Watson's attorney offered a limited portion of the cooperation agreement for the purpose of establishing that Watson had been coerced unlawfully because the government told him that he would be arrested if he retained counsel. Although the district court earlier had excluded the entire document, it now admitted only that portion offered by Watson's attorney.

After hearing a number of witnesses, including Watson and the agents, the district court issued a written order granting Watson's motion to suppress all of his written and oral statements from September 16, 1993. The district court ruled that Watson was in custody when the officers questioned him in his residence and, therefore, suppressed all of the statements Watson made before being questioned at the Dirksen Building because the agents had failed to administer *Miranda* warnings. The district court suppressed all of the oral statements Watson made at the Dirksen Building because the court credited Watson's testimony that he had not made the statements. Next, the district court suppressed Watson's writ-

ten statement because he signed it prior to signing the waiver of rights, and because the agents did not heed Watson's request for an attorney. Finally, the district court found that the officers had coerced Watson's written statement because the limited portion of the cooperation agreement that the district court admitted into evidence indicated that the government forced Watson to forego an attorney in exchange for allowing him to leave the Dirksen Building on September 16th.

■ We review the district court's evidentiary rulings at a suppression hearing for abuse of discretion. *United States v. Webb*, 83 F.3d 913, 917 (7th Cir.1996). This is a high hurdle for any appellant to clear because we will find no abuse of discretion where the record reveals some legitimate basis for the district court's decision. *United States v. Doerr*, 886 F.2d 944, 970 (7th Cir. 1989). However, after carefully reviewing the entire record, we conclude that we must reverse the district court's suppression ruling and remand for a new suppression hearing.

■ When the government offered into evidence Watson's written statement, Watson objected because he had not decided whether to proceed with a bench or jury trial. Therefore, Watson argued, it would prejudice the judge-i.e. the potential finder of fact—to see what was in the allegedly improperly obtained statement. The government responded that the content of the statement was relevant to its voluntariness and that the statement corroborated one of the officer's testimony. After hearing argument, the district court ruled that the statement itself was inadmissible for purposes of the hearing on the motion to suppress the statement. This was error.

We first examine the district court's stated reason for suppressing the confession.

> If I allow [this] motion, ultimately, I suspect from what I have heard of the evidence that the government is going to appeal it immediately since it affects their case in a substantial fashion, I suspect, and if they win that appeal the appellate court is going to see the statement if I put it in, and that's going to affect your case anyway

because half the people up there have never been trial judges and if you want to talk about being affected by a record, it's one thing to have nothing but the confession to look at and it's another thing to have witnesses to listen to and to talk to and be a trial judge with a lot of trial experience.... And if the appellate court sees [the statement], maybe they can be biased by it.... And so I'm going to allow your objection.

Initially, we note that Watson's stated reason for his objection to the admission of the confession was without merit. Federal Rule of Criminal Procedure 23(a) allows a defendant to waive a jury trial "with the approval of the court and the consent of the government." Given the relationship between the government and the court in this case, it seems highly unlikely that the government would have consented to a bench trial.

Next, although we do not appreciate the inadvisable commentary, (parenthetically, this panel of appellate judges has considerable trial court experience), our real objection to this evidentiary ruling is that it is wrong on several levels.[2] First, as a matter of common sense, the offending statement already was a part of the record because the government had appended it to its response to Watson's motion to suppress. In addition, by offering the statement into evidence, the government insured that it would be part of the record on appeal. Either way, the district court was powerless to avoid the apparent calamity of ivory tower judges on this court becoming aware of the substance of the confession.

Second, and more importantly, the statement was entirely relevant and admissible.

In *United States v. Matlock,* 415 U.S. 164, 173, 94 S.Ct. 988, 994, 39 L.Ed.2d 242 (1974), the Court held that, aside from privilege, exclusionary rules should not apply in a proceeding in which the court itself is considering the admissibility of evidence. Although the district court was correct that a trial judge has the valuable experience of observing the witnesses and seeing the evidence firsthand, it erred in concluding that this was a valid reason to exclude the written statement. On the contrary, it is just this experience that the Court in *Matlock* relied on in ruling that "the [trial] judge should receive the evidence and give it such weight as his judgment and experience counsel." *Id.*

▪ A motion to suppress a confession does not automatically prevent the use of the confession at the suppression hearing. Even where a bench trial follows after the same court suppresses a confession, we presume that the district court is able to disregard the excluded confession in determining guilt or innocence. *See United States v. Brooks,* 355 F.2d 540, 542 (7th Cir.1965), *cert. denied,* 383 U.S. 969, 86 S.Ct. 1274, 16 L.Ed.2d 309 (1966). In ruling on a motion to suppress a confession, the district court reviews the "totality of the circumstances" surrounding the confession. *United States v. Springs,* 17 F.3d 192, 194 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 375, 130 L.Ed.2d 326 (1994). By definition, this includes the confession itself.

▪ The district court also mistakenly refused to permit the government to cross-examine Watson about the substance of his confession. Watson testified on direct examination that he never made incriminating statements to the officers and that the reason

---

**2.** It bears repeating that "[o]urs is a hierarchical judiciary...." *Gacy v. Welborn,* 994 F.2d 305, 310 (7th Cir.), *cert. denied,* 510 U.S. 899, 114 S.Ct. 269, 126 L.Ed.2d 220 (1993). This does not mean that the district courts must revere the courts of appeals. And it also does not mean that the judges of the courts of appeals necessarily are more knowledgeable about law or the workings of the criminal justice system. Nevertheless, "[w]henever decisions of one court are reviewed by another, a percentage of them are reversed. That reflects a difference in outlook normally found between personnel comprising different courts...." *Brown v. Allen,* 344 U.S.

443, 540, 73 S.Ct. 397, 427, 97 L.Ed. 469 (1953) (Jackson, J. concurring). To paraphrase Justice Jackson, we are not next because we are wiser, but we are wiser only because we are next. *Id.*; *See also* Evan H. Caminker, *Why Must Inferior Courts Obey Superior Court Precedent?,* 46 Stan. L.Rev. 817 (1994). Apparently, the district court believed that it should exclude evidence from the suppression hearing because of the "difference of outlook" between it and this court. We recognize that such differences in outlook may exist at times, but under no circumstances can these differences justify the exclusion of admissible evidence.

he signed the confession was because the officers told him that signing was the only way they would let him go home. Watson also testified that he signed the waiver of rights **after** signing the confession. The government sought to cross-examine Watson, using the substance of his confession in order to attack his credibility. Watson objected and the district court sustained the objection:

Why should you by indirection be allowed to put into this record so that the Court can hear, and it would influence the Court as to the truth of the matter, that could bias the situation or worse, to have some appellate court not even experienced necessarily in the areas of motions to suppress in police stations and all of those other worldly things that we have all seen in the state courts with the state police and then you are going to, I suppose intend the judges, me or others, and that doesn't make sense.

Regardless of the trial court's practical experience with the inner workings of local police stations, Watson's confession was a quintessential prior inconsistent statement that the government was permitted to use with impunity in cross-examining Watson. "Prior inconsistent statements can severely undermine the credibility of a witness, by showing either a flimsy recollection of events or worse, a propensity to lie. . . ." *United States v. Lashmett,* 965 F.2d 179, 182 (7th Cir.1992); Fed.R.Evid. 613(a). The district court erred in prohibiting the government from using Watson's confession as a prior inconsistent statement.

The fact that the confession ultimately might be suppressed does not alter the analysis. Under *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), statements suppressed under *Miranda* may be used to impeach inconsistent subsequent testimony. *See United States v. Vega,* 72 F.3d 507 (7th Cir.1995). This case does not even raise a *Harris* problem since at the time of the suppression hearing, the district court had not found that the confession was obtained in violation of *Miranda.* Accordingly,

the substance of the confession was fair game for cross-examination of Watson, and the district court abused its discretion in restricting the government's use of the confession.

■ Next, the district court erred in excluding the cooperation agreement as irrelevant as to whether the confession was voluntary because it was made after the confession. We fail to see why the cooperation agreement is irrelevant simply because it came after the confession and waiver of rights. If the cooperation agreement can shed light on the matters to be considered at the hearing on the motion to suppress—and we cannot even conceive how it would not—then it is relevant and the district court should consider it. As we stated above, the district court considers the *totality* of the circumstances surrounding the confession. In this case, that included pre-confession and post-confession evidence.[3]

Finally, while this appeal does not address the district court's credibility determinations, we must comment on one aspect of the district court's findings. According to the government, an Assistant United States Attorney and an FBI agent met with Watson when he signed the cooperation agreement. Watson testified, however, that when he met with the agent and the AUSA, he signed the waiver of rights, not the cooperation agreement. In fact, he did not even mention the cooperation agreement on direct. One of the FBI agents testified about the government's version of the meeting. The district court curtailed the government's presentation of the evidence, and ultimately discredited this agent's testimony, because he felt that the AUSA asked too many leading questions, and therefore was attempting to testify, rather than be an advocate.

■ The district court was correct to flag the issue of the potential problem that may arise when an AUSA is both the trial attorney and a potential witness. However, the court's resolution of the issue—criticizing the AUSA as unethical and discrediting the

---

**3.** The district court's coercion finding also was in error because it wrongly admitted only a small

portion of the cooperation agreement.

agent's testimony—was error. Under the advocate-witness rule, counsel is barred from acting as both an advocate and a witness in a single proceeding except under special circumstances. *United States v. Marshall,* 75 F.3d 1097, 1106 (7th Cir.1996). However, that does not mean that every AUSA who interviews a suspect is precluded from representing the government at a suppression hearing regarding the suspect's statement. Far from it. The correct procedure, and one that the AUSA followed in this case, is to avoid interviewing a suspect except in the presence of a third person so that the third person can testify about the interview. *See, e.g., United States v. Johnston,* 690 F.2d 638, 645 (7th Cir.1982)(en banc); *United States v. Bailin,* 1990 WL 16435 (N.D.Ill.).

## CONCLUSION

For the foregoing reasons, we reverse the district court's suppression order and remand for a new suppression hearing consistent with this opinion. Rule 36 shall apply on remand.

REVERSED and REMANDED.