United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 7, 2005**

Charles R. Fulbruge III
Clerk

*In the United States Court of Appeals*
*For the Fifth Circuit*

No. 04-60137

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MICHAEL STARNES,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 2:02-CR-95-1-P

Before BENAVIDES, STEWART, and OWEN, Circuit Judges.

PER CURIAM:[*]

Michael Starnes was convicted of ten counts of federal drug trafficking and firearms violations

and sentenced to 145 years in prison. Starnes appeals his convictions and sentences on various

grounds, including claims based on the Double Jeopardy Clause of the United States Constitution,

the Speedy Trial Act, and *United States v. Booker*. We vacate Starnes's sentences and remand for

resentencing consistent with this opinion. Additionally, we instruct the district court to dismiss the

two 18 U.S.C. § 924(c) sentences elected by the government. Starnes is then to be resentenced under

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

the remaining § 924(c) conviction. The convictions and judgment of the district court are affirmed in all other respects.

## I

The facts in this case are in dispute, but taking the facts in the light most favorable to the guilty verdict,[1] the record shows Starnes, leader of a gang called the Unknown Vice Lords (UVL), participated in a series of gang-related activities that led to his arrest and convictions.

The course of events leading to Starnes's arrest and convictions began with a retaliatory attack on a rival gang after an UVL member was shot and wounded. During the attack, Starnes and other UVL members fired several gunshots into a trailer home, wounding a man inside. After the attack, police investigating the shooting found Starnes and the other UVL members in a nearby motel with six loaded handguns. The handguns consisted of three .45 caliber pistols, one .38 caliber pistol, and two 9mm pistols. These six weapons form the basis of one of Starnes's 18 U.S.C. § 924(c)(1) convictions for possession of firearms in furtherance of a drug trafficking crime.[2]

In the week after the foregoing incident, police attempted to stop a car driven by Starnes.

---

[1]*United States v. Miles*, 360 F.3d 472, 476 (5th Cir. 2004) ("In evaluating whether the evidence produced at trial is sufficient to support a jury conviction, this court examines whether a rational jury, viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the offense to be satisfied beyond a reasonable doubt. In reviewing the evidence presented at trial, we draw all reasonable inferences in favor of the jury's verdict." (internal citations omitted)).

[2]*See* 18 U.S.C. §924(c)(1) ("[A]ny person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime," be sentenced to varying terms of imprisonment based on the kind of firearm and the nature of its use.").

Starnes refused to stop and led police on a chase that culminated in Starnes crashing his car and unsuccessfully attempting to escape on foot. In Starnes's car, police found seven weapons. The seven weapons included an AK 7.62mm semi-automatic assault rifle, two Hi-point 9mm assault rifles, a .20 gauge shotgun, a .22 caliber rifle, a .22 caliber derringer, and a Hi-point 9mm pistol. The underlying indictment included a separate alleged § 924(c)(1) violation arising from Starnes's possession of these seven firearms.

Starnes was also charged with and later convicted of possession of a machinegun in violation of 26 U.S.C. § 5861(d) and 18 U.S.C. § 924(c)(1)(B)(ii). Police discovered the machinegun (a Colt AR-15) and four other loaded weapons after executing a search warrant at Starnes's residence. During the search, police also discovered crack cocaine, ammunition, and UVL gang documents.

During a second search of Starnes's residence, Starnes and other UVL members were found with crack cocaine and approximately 215 grams of marijuana. The lead prosecutor in Starnes's trial, Assistant United States Attorney Charlie Spillers, was present during this search. The drugs found during the search form the basis of Starnes's drug trafficking convictions, which consisted of: 1) two counts of conspiracy to possess a controlled substance with an intent to distribute in violation of 21 U.S.C. § 841(a); (2) two counts of possession of a controlled substance with an intent to distribute in violation of 21 U.S.C. § 841(a); and (3) one count of maintenance of a place for the distribution of marijuana in violation of 21 U.S.C. § 856(a)(1).

Assistant United States Attorney Charlie Spillers also participated in one other search relevant to Starnes's case. The search occurred after ATF agent Joey Hall and Spillers had a chance encounter with Starnes. After a few questions, Hall and Spillers requested and received permission from Starnes to search his residence. During the search, Hall seized a door bell he believed was

3

related to drug trafficking activities.

Starnes was finally arrested on July 31, 2002 and indicted on six counts of federal drug-trafficking and firearms charges. Because Starnes claims the government violated his rights under the Speedy Trial Act, the following dates are relevant. On August 2, 2002, a United States magistrate judge ordered Starnes detained as "high risk" pending trial but did not enter a scheduling order because one of his co-defendants, Robert Cochran, had not yet been arrested. On January 7, 2003, after Cochran was arrested, Starnes filed a motion for bond pending trial. The motion was denied, but the trial court entered a scheduling order, setting a trial date of February 24, 2003. On January 30, 2003, Starnes moved for a trial continuance because the government had produced several hundred documents within 45 days of trial. The trial court granted the motion and continued the trial from February 24, 2003 to April 7, 2003.

On March 20, 2003, the government filed a superceding indictment that included four additional counts that were not contained in the original indictment and modified one count to charge the defendants with possessing a machinegun in violation of 18 U.S.C. § 924(c)(1)(B)(ii). The grand jury returned the superceding indictment on all ten counts. On March 26, 2003, Starnes filed a motion for continuance, claiming that he needed more time to adequately prepare for trial on the superceding indictment. The trial court granted the motion and continued the trial from April 7, 2003 to June 9, 2003. On March 31, 2003, Starnes again moved for bond pending trial. The trial court granted the motion and set bond at $100,000. Starnes, however, was unable to post bond. On June 5, 2003, the government filed a motion for continuance because one of its key witnesses was ill. The trial court granted the motion and continued the trial from June 9, 2003 to September 8, 2003.

Starnes's co-defendants subsequently entered guilty pleas, and the case against Starnes

4

proceeded to trial with Spillers as the lead prosecutor. Starnes moved to disqualify Spillers as counsel, claiming Spillers was a potential witness in the case. The district court denied Starnes's motion to disqualify, and a jury subsequently convicted Starnes on all ten counts of the superceding indictment. After the verdict, Starnes moved for judgment notwithstanding the verdict, asserting that the evidence was legally insufficient to support his convictions on the firearms-related counts. The district judge denied the motion.

United States Probation prepared a presentence investigation report. The six drug-related counts were grouped together pursuant to United States Sentencing Guidelines Manual ("U.S.S.G.") § 3D1.2(d) (Groups of Closely Related Counts), and United States Probation assigned a base offense level of 36. The report also included: 1) an upward adjustment of four levels pursuant to U.S.S.G. § 3B1.1(a) because Starnes "was an organizer or leader of criminal activity that involved five or more participants"; 2) an upward adjustment of two levels pursuant to U.S.S.G. § 3C1.1 because Starnes "instructed [his co-defendant] Robert Cochran to flee to avoid arrest"; and 3) an upward adjustment of two levels pursuant to U.S.S.G. § 3B1.4 because Starnes "was involved in a conspiracy which [sic] utilized persons under age 18 to commit the offense."

For possessing an unregistered machinegun in violation of 26 U.S.C. § 5845(b), U.S. Probation assigned a base offense level of 18 and recommended the court impose the same three enhancements detailed above. U.S. Probation did not assign a base offense level on the three counts related to possession of a firearm in furtherance of a drug trafficking crime because the term of imprisonment for 18 U.S.C. § 924(c) convictions is determined by statute.[3] The district court followed the recommendations in the presentence report and sentenced Starnes to consecutive terms

---

[3]*See* U.S. SENTENCING GUIDELINES MANUAL § 2K2.4(b).

5

of imprisonment totaling 145 years.

On appeal, Starnes challenges his convictions and sentences on grounds that (1) the evidence was insufficient to support his two convictions for unlawfully possessing a Colt AR-15 machinegun; (2) the district court erred when it failed to disqualify Assistant United States Attorney Charlie Spillers because he was a potential fact witness; (3) the district court violated his double jeopardy rights when it sentenced him for three 18 U.S.C. § 924(c)(1) convictions without linking each offense to a separate drug trafficking crime; (4) the district court erred when it ordered him detained for a period beyond that permitted by the Speedy Trial Act;[5] and (5) the district court violated his Sixth Amendment rights under *United States v. Booker*[7] because the court used extra-verdict facts to enhance his base offense level.

## II

We review a claim of insufficiency of the evidence in the light most favorable to the verdict, affording the government the benefit of all reasonable inferences.[8] The verdict must be affirmed if a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.[9] A Colt AR-15 found in Starnes's residence forms the basis of his convictions for: 1) possessing an unregistered machinegun in violation of 26 U.S.C. § 5861(d), and 2) possessing a

---

[5]*See* 18 U.S.C. § 3164(b).

[7]125 S.Ct. 738.

[8]*See United States v. Gonzales,* 121 F.3d 928, 935 (5th Cir. 1997).

[9]*Id.*

machinegun in violation of 18 U.S.C. § 924(c)(1).[10] The principal issue in dispute is whether Starnes

knew that the Colt AR-15 was a machinegun, within the meaning of 26 U.S.C. § 5861(d). We

conclude that the evidence is sufficient to support Starnes's convictions for possession of a

machinegun.[11]

For the government to prove that a defendant unlawfully possessed an unregistered

machinegun in violation of 26 U.S.C. § 5861(d), the government must show that the defendant knew

of the features that bring the firearm within the purview of the statutory definition of a machinegun,[12]

which is "any weapon which shoots, is designed to shoot, or can be readily restored to shoot,

automatically more than one shot, without manual reloading, by a single function of the trigger."[13]

It is undisputed that the Colt AR-15 meets the statutory definition of a machinegun, but Starnes

contends the evidence is legally insufficient to prove that he knew the Colt AR-15 was a machinegun.

In *United States v. Gonzales*, this court held that a jury may infer that a gun-owner has

knowledge of his or her gun's automatic capabilities.[14]  In *Gonzales*, the defendant was convicted

---

[10]Under 18 U.S.C. § 924(c)(1), the minimum sentence for possessing a machinegun in furtherance of a drug trafficking crime is thirty years.  The minimum sentence for possessing a firearm, that is not a machinegun, is five years.

[11]Starnes also challenges the sufficiency of the evidence to support his conviction for possessing a machinegun in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(B)(ii).  Starnes contends that to sustain a conviction under § 924(c)(1)(B)(ii), the government must prove that he knew the Colt AR-15 was a machinegun.  Because there was sufficient evidence that Starnes knew the Colt AR-15 was a machinegun, we need not decide whether the government must prove that Starnes knew the Colt AR-15 was a machinegun to sustain a conviction under § 924(c)(1)(B)(ii).

[12]*Staples v. United States*, 511 U.S. 600, 619 (1994).

[13]26 U.S.C. § 5845(b).

[14]*See Gonzales*, 121 F.3d at 937.

under 18 U.S.C. § 922(o), a different machinegun statute that also requires that the defendant know of a firearm's automatic capabilities.[15] The only evidence in *Gonzales* that linked the defendant to the machinegun was the defendant's claim to be the gun's owner.[16] In finding the evidence legally sufficient, we said, "[i]t defies credibility to suggest that the owner of a machinegun–albeit a modified semi-automatic rifle converted into a machinegun–did not realize that the rifle was an automatic weapon."[17]

Robert Cochran, a cooperating UVL member and Starnes's former co-defendant, provided the following testimony about the Colt AR-15 when questioned by the prosecutor on direct examination:

> Q : You tell this jury now what the truth is about that [Colt AR-15].
> A: That night Lee Myles brought it over there.
> Q: Brought it over where?
> A: To Michael Starnes at 630 Lincoln. Terrian Pate, me, myself, and Claude Burks, and Michael Starnes was in the house, and Lee Myles knocked on the door. Michael Starnes got up and answered it. He brought in the AR-15. Michael Starnes asked how much he wanted for it. And Michael Starnes gave him $600 in cash.
> Q: 600 in cash?
> A: Yes, sir.[18]
>
> ***
>
> Q: At the time that Lee Myles was selling [the Colt AR-15] to Starnes, did anyone know then that it was fully automatic?
> A: No, sir.
> Q: No one knew then?
> A: No, sir.

---

[15]*Id.* ("To obtain a conviction under 18 U.S.C. § 922(o), the government must prove that the defendant knew the firearm was a machinegun"); *see also* 18 U.S.C. § 922(o) ("[I]t shall be unlawful for any person to transfer or possess a machinegun.").

[16]*Id.*

[17]*Id.*

[18]Trial Tr. vol. 3, 522, Sept. 10, 2003.

Q: And y'all found out later on?
A: Yes, sir.
Q: And by fully automatic, we're talking about a gun that shoots like a machine gun?
A: Yes, sir.[19]

Cochran's testimony demonstrates that Starnes was the owner of the Colt AR-15. Under *Gonzales*, this evidence is sufficient to support an inference that Starnes knew that the Colt AR-15 was a machinegun. Additionally, Cochran answered the prosecutor's question, "ya'll found out later on [that the Colt AR-15 was automatic]?," affirmatively. Because Starnes was included in the group of people referred to in the colloquy before the term "ya'll" was used, the jury could have reasonably inferred that "ya'll" included Starnes. Therefore, we conclude that sufficient evidence was presented at trial to permit a rational trier of fact to find beyond a reasonable doubt that Starnes knew the Colt AR-15 was a machinegun.

### III

Starnes next argues that he is entitled to a new trial because the district court failed to disqualify Assistant United States Attorney Charlie Spillers after Spillers participated in two searches relevant to his case . We review denial of a motion to disqualify for abuse of discretion.[20] But in applying this standard, we review findings of fact for clear error and perform a *de novo* review of the district court's application of the relevant rules of attorney conduct.[21]

"[D]isqualification cases are governed by state and national ethical standards adopted by the

---

[19]*Id.* at 523.

[20]*See Fed. Deposit Ins. Co. v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1311 (5th Cir. 1992).

[21]*Id*. (quoting *In re Am. Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992)).

court."[22]  The Rules of the Northern District of Mississippi specifically adopt the Mississippi Rules

of Professional Conduct.[23]  These rules are identical to the American Bar Association's Model Rules

of Professional Conduct in all relevant aspects.  Mississippi Rule of Professional Conduct 3.7(a) ("the

lawyer-as-witness rule") states:

> A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a *necessary* witness except where: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client.[24]

Because the lawyer-as-witness rule is not implicated unless the lawyer is "likely to be a necessary

witness," the rule does not preclude every prosecutor who participates in the search of a suspect's

residence from representing the government against that suspect.[25]  A lawyer is not "likely to be a

necessary witness" when evidence pertaining to each matter to which he could testify is available from

another source.[26]  In *Horaist*, for example, we held that because a lawyer's potential testimony was

cumulative of other evidence (the potential testimony of other witnesses), the lawyer was not a

necessary witness and the trial court did not err in refusing to disqualify him.[27]

---

[22]*Id.*

[23]Jt. Ms. Loc. R. 83.5.

[24]Miss. R. Prof. Conduct 3.7 (emphasis added).

[25]*See United States v. Watson*, 87 F.3d 927, 932 (7th Cir. 1996) (The advocate-witness rule does not imply that every AUSA who interviews a suspect is precluded from representing the government at a suppression hearing regarding the suspect's statement.  Far from it. The correct procedure and one that the AUSA followed in this case is to avoid interviewing a suspect except in the presence of a third person so that the third person can testify about the interview.").

[26]*Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 267 (5th Cir. 2001).

[27]*Id.*

Assistant United States Attorney Spillers, the lead prosecutor in Starnes's case, participated in two searches relevant to Starnes's case. Spillers was not, however, alone during these searches. With regard to the first search, the record shows that Spillers was joined by other law enforcement agents, and Starnes does not allege that Spillers observed anything that was not observed by the other agents. With regard to the second search, Starnes admits that ATF agent Joey Hall was also present. Additionally, Starnes admitted during the pre-trial disqualification hearing that Hall would have been able to hear anything that Starnes said to either Spillers or Hall. Because any testimony that Spillers could provide was available from another source, Spillers was not likely to be a necessary witness. We therefore affirm the district court's denial of Starnes's motion to disqualify Spillers and refuse to remand the case for a new trial.

## IV

The next issue is whether the district court violated Starnes's double jeopardy rights when it sentenced him for three counts (counts five, six, and seven) of possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). The government concedes that the superceding indictment fails to sufficiently link each § 924(c) firearm offense to a separate drug trafficking offense and elects to dismiss counts six and seven to remedy the violation of Starnes's double jeopardy rights.[28] Accordingly, we vacate Starnes's three § 924(c) sentences and remand with instructions that counts six and seven be dismissed and that Starnes be resentenced under count five.[29]

---

[28]*See United States v. Privette*, 947 F.2d 1259, 1262-63 (5th Cir. 1991) (holding that to survive double jeopardy principles each 18 U.S.C. 924(c) firearms offense in which the defendant is convicted must be sufficiently linked to a separate drug trafficking offense).

[29]*Id.* ("The proper remedy for multiplication of punishment is to vacate the sentences on all the counts and remand with instructions that the count elected by the government be dismissed. The defendant is then to be resentenced.").

Because the government elected to dismiss counts six and seven, we need not address Starnes's legal sufficiency of the evidence challenge as to those counts.

## V

Starnes also challenges his sentences based on the Speedy Trial Act, arguing that the sentences should be vacated and he should be released as a sanction for the government's violation of 18 U.S.C. § 3164(b). The record demonstrates that Starnes was tried 404 days after his arrest, a period of delay in excess of the ninety-day period set forth in 18 U.S.C. § 3164(b). However, § 3164(b) specifically states that "the periods of delay enumerated in § 3164(h) are excluded in computing the time limitation specified in this section." The time excluded by the district court includes the 208 days between July 31, 2002 and February 24, 2003 because of the unavailability of a co-defendant (Robert Cochran),[30] the 62 days between April 7, 2003 and June 9, 2003 based on Starnes's request for additional time to respond to the superceding indictment,[31] and the 91 days between June 9, 2003 and September 8, 2003 based on the unavailability of Captain Danny Hill, an essential witness.[32] These time periods were properly excluded under the express provisions of 18 U.S.C. § 3161(h). Starnes was therefore tried within the Speedy Trial Act's ninety-day confinement rule. The government did not violate Starnes's rights under 18 U.S.C. § 3164(b).

---

[30]*See* 18 U.S.C. §§ 3161(3)(h)(A), (B).

[31]*See id.* § 3161(h)(8)(A).

[32]*See id.* §§ 3161(h)(3)(A), (B).

12

## VI

Finally, Starnes argues that the district court committed *Booker* error by using extra-verdict facts to enhance his base offense level. Starnes did not preserve this issue in the district court. Therefore, appellate review is only for plain error.[33] In order to establish plain error, Starnes must show: (1) error (2) that is clear and obvious, and (3) that affects substantial rights.[34] Even when this standard is met, the court will only correct errors that seriously affect the fairness, integrity, or public reputation of judicial proceedings.[35]

The first and second prongs of the plain error test are met. Starnes's base offense level for the drug-related offenses was enhanced from 36 to 44 based on a finding that Starnes was: 1) accountable for instructing a co-conspirator to flee to avoid arrest,[36] 2) the leader and organizer of a gang that facilitated the distribution of controlled substances with the use of firearms,[37] and 3) involved in a conspiracy that utilized persons under age 18 to commit the offense.[38] Starnes's base offense level for unlawfully possessing a machinegun was enhanced from 18 to 26 based on the same findings. These facts were neither found by the jury nor admitted by Starnes. Under *Booker*, this is plain error.[39]

---

[33] *United States v. Mares*, 402 F.3d 511, 520 (5th Cir. 2005).

[34] *Mares*, 402 F.3d at 520; *United States v. Infante*, 404 F.3d 376, 394 (5th Cir. 2005).

[35] *Mares*, 402 F.3d at 520.

[36] *See* U.S. SENTENCING GUIDELINES MANUAL § 3C1.1.

[37] *Id.* at § 3B.1.1.

[38] *Id.* at § 3B1.4.

[39] *See United States v. Booker*, 125 S.Ct. 738 (2005); *see also United States v. Olano*, 507 U.S. 725, 737 (1993); *Mares*, 402 F.3d at 521 (noting that *Booker* errors are also "plain").

13

The third prong of the plain error test is also satisfied in this case. For an error to affect substantial rights, it "must have affected the outcome of the district court proceedings."[40] This standard requires the defendant to "point to statements in the record by the sentencing judge demonstrating a likelihood that the judge sentencing under an advisory scheme rather than a mandatory one would have reached a significantly different result."[41] In this case, the judge stated at sentencing:

> I am trying to find something in it that might lessen the impact of these–of what I think is required. Your guideline range went off the chart. It completely went off the chart. I've never seen anything like this. I know that according to the dictates that I have from Congress this is what I'm required to do. I don't like it. I don't want to do it. I tried to find a way not to do it. But I think under the law it's what I've got to do.

These statements demonstrate a likelihood that the judge would have reached a different result had Starnes been sentenced under an advisory scheme rather than a mandatory one. Therefore, the third prong of the plain error test is satisfied.

Because the application of mandatory guidelines may have significantly increased Starnes's sentences, the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.[42] Accordingly, we vacate Starnes's sentences and remand the case to the district court for resentencing consistent with *Booker*.

* * *

---

[40]*Mares*, 402 F.3d at 521 (quoting *Olano*, 507 U.S. at 734).

[41]*United States v. Pennell*, 409 F.3d 240, 245 (5th Cir. 2005).

[42]*See United States v. Gracia-Cantu*, 302 F.3d 308, 313(5th Cir. 2002) (holding that a sentencing error that dramatically increases the defendant's recommended imprisonment range and actual term of imprisonment seriously affects the fairness, integrity, or public reputation of the judicial proceedings).

For the foregoing reasons, we vacate Starnes's sentences and remand for resentencing consistent with this opinion. Additionally, we instruct the district court to dismiss the two 18 U.S.C. § 924(c) sentences elected by the government. Starnes is then to be resentenced under the remaining § 924(c) conviction. The convictions and judgment of the district court are affirmed in all other respects.